IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            Plaintiff,<br><br>    v.<br><br>BURLINGTON NORTHERN AND SANTA FE<br>RAILWAY COMPANY,<br><br>CITY OF NORTH KANSAS CITY,<br>MISSOURI,<br><br>HARDEE'S FOOD SYSTEMS, INC.,<br><br>NANCY READE FORSTER AS THE<br>PERSONAL REPRESENTATIVE OF THE<br>ESTATE OF CHARLES F. READE, SR.,<br><br>TERRACON, INC., and<br><br>U.S. BORAX INC.<br><br>           Defendants. | CIVIL NO. 04-0319-CV-W-NKL |

## CONSENT DECREE

# TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
V.      GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
VI.     PERFORMANCE OF THE WORK BY PERFORMING DEFENDANTS . . . . . . . . . . . . . . . . 8
VII.    ACCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
VIII.   REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
IX.     EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . 17
X.      ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
XI.     CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
XII.    EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
XIII.   PAYMENTS BY CASH-OUT PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
XIV.    PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
XV.     INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
XVI.    FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
XVII.   DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
XVIII.  STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
XIX.    MIXED FUNDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
XX.     COVENANTS NOT TO SUE BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
XXI.    COVENANTS BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
XXII.   EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . . . 37
XXIII.  ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
XXIV.  RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
XXV.    NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
XXVI.   EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
XXVII.  RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
XXVIII. APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
XXIX.   MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
XXX.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . . 43
XXXI.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
XXXII.  FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

APPENDIX A - EE/CA
APPENDIX B - MODEL RESTRICTIVE COVENANT AND EASEMENT
APPENDIX C - PREAUTHORIZATION DECISION DOCUMENT

# I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.      The United States in its complaint seeks the performance of a removal action by some of the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

D.      In August 1989, Terracon, Inc., and in December 1990, the Missouri Department of Natural Resources ("MDNR") sampled soil and groundwater at the Site and found high concentrations of arsenic, 2,4-dichlorophenoxyacetic acid ("2,4-D"), 2,4,5-trichlorophenoxyacetic acid ("2,4,5-T"), and pentachlorophenol ("PCP").  A composite soil sample contained arsenic at 4,400 milligrams per kilogram (or parts per million ("ppm")).  Groundwater samples contained arsenic at levels to 4,100 ppm, 2,4-D to 94 ppm, 2,4,5-T to 17 ppm, and PCP to 98 ppm.

E.      On July 18, 1991, the MDNR proposed that the Site be placed on the State's Register of Confirmed Abandoned or Uncontrolled Hazardous Waste Disposal Sites (the "State Registry").  This proposal was appealed on August 15, 1991, by K.C. 1986 Limited Partnership ("K.C. 1986"), the owner of the Site.  In October 1993, MDNR and K.C. 1986 entered into a Consent Agreement pursuant to which the State agreed to withdraw the proposed State Registry action in consideration of K.C. 1986, among other things,  conducting an environmental investigation and remediating contamination at the Site to MDNR's satisfaction.  While K.C. 1986 conducted a partial Site investigation, it failed to complete the investigation or remediate any contamination at the Site.  Accordingly, the MDNR placed the Site on the State Registry on May 22, 1997.

F.      MDNR performed sampling at the Site in January 1996 and released a report entitled "Expanded Site Inspection Sampling Report," dated February 22-23, 1996.  Results of this sampling indicated the presence of arsenic in soils at the Site at levels up to 54,900 ppm, 2,4-D at levels up to 7 ppm, 2,4,5-T at levels up to 84 ppm, and PCP at levels up to 1.5 ppm.

G.      EPA conducted sampling at the Site in May 1996, analyzing for arsenic in near-surface soils (0-6 inch depth).  Results of this sampling indicated the presence of arsenic at levels to 121,000 ppm.

H. In May 1996, EPA initiated a time-critical removal action at the Site to reduce or eliminate human exposure to arsenic-contaminated soils at the Site through the exposure routes of ingestion, inhalation, and dermal contact. Approximately 7,500 square yards of polypropylene geofabric and 340 tons of crushed rock were placed on top of soils contaminated at levels above 200 ppm arsenic. In addition, a security fence was placed on the southern and eastern portions to limit access to the Site. Additional gravel was placed on the Site by EPA in the summer of 2000 to maintain the cover and protectiveness of this response action.

I. In mid-1996, EPA sent letters notifying parties of their potential liability to U.S. Borax, Inc. ("Borax"), Reactive Metals & Alloys Corporation (the successor to Reade Manufacturing), and K.C. 1986 Limited Partnership. These notice letters also requested that each recipient enter into an Administrative Order on Consent to investigate the scope of contamination at the Site. In December 1996, EPA and Borax entered into an Administrative Order on Consent for the performance by Borax of an engineering evaluation/cost analysis ("EE/CA") at the Site. This Administrative Order on Consent bears EPA Docket Number VII-97-F-0005. On June 30, 1999, this Administrative Order on Consent was amended by EPA and Borax to provide for the performance of a treatability study. (The Administrative Order on Consent, including the amendment, is referred to herein as the "AOC".)

J. In December 1997, pursuant to the AOC, a general study of the Site was conducted by Borax's contractor URS Corporation. Results of this sampling indicated widespread arsenic contamination within Site soils.

K. On October 14, 1998, the U.S. Department of Health and Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry ("ATSDR") issued a Public Health Assessment for the Site. Considering the exposure pathways, and the high levels of contamination (especially arsenic), the Site was classified by the ATSDR as posing an Urgent Public Health Hazard.

L. On January 19, 1999, the Site was proposed for inclusion on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B. By Final Rule published at 64 Fed. Reg. 24949, the Site was included on the NPL on June 9, 1999.

M. In May 1999, pursuant to the AOC, a limited study of the Site was conducted by Borax. The purpose of this limited study was to collect soil samples for testing the applicability and effectiveness of electrokinetic remediation at the site. These samples indicated pervasive arsenic contamination in site soils to a depth of approximately 20 feet.

N. In May 2001, pursuant to the AOC, a Site investigation was conducted by Borax to further define the three-dimensional distribution of hazardous substances in Site soils. The results of this investigation and earlier studies show that arsenic concentrations in surface soil ranged from 5.5 to 121,000 ppm, with high concentrations detected at the southcentral portion of the Site. Analytical results show that the concentration of PCP at the Site ranges from non-detect to 53,089 parts per billion ("ppb"), the concentration of 2,4,5-T ranges from non-detect to 20,745.88 ppb, and the concentration of 2,4,6-T ranges from non-detect to 470.72 ppb.

2

O.      In March 2002, Borax submitted an EE/CA to EPA and MDNR for review and approval.  The EE/CA evaluated alternatives for responding to the presence of certain hazardous substances in Site soils.  In accordance with the NCP, EPA published notice of the release of the EE/CA in *The Kansas City Star*, a major newspaper of general circulation in the Kansas City metropolitan area on March 13, 2002.  EPA provided the public with a 30-day opportunity for submitting written and oral comments to EPA on the response alternatives set forth in the EE/CA. No substantive comments were submitted.

P.      On May 16, 2002, EPA selected Multi Media Alternative 5, which involves the demolition and off-site disposal of on-Site structures, the excavation and off-Site disposal of contaminated soils, and the placement of clean fill at the Site, as the response action to be implemented to address contaminated Site structures and soils.  MDNR concurred on this selection.

Q.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their heirs, successors, and assigns.  Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Performing Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the

3

terms of this Consent Decree. Performing Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Performing Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Performing Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, et seq.

"Cash-Out Parties" shall mean the City of North Kansas City, Missouri ("City"), Hardee's Foods Systems, Inc. ("Hardee's"), the Estate of Charles F. Reade, Sr., Nancy Reade Forster, Personal Representative ("Estate"), and Terracon, Inc. ("Terracon").

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"EE/CA" shall mean the March 2002 Engineering Evaluation/Cost Analysis prepared for the Site by URS Corporation on behalf of Borax and attached hereto as Appendix A.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 91.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Performing Defendants' Response Costs" shall mean all costs incurred by the

4

Performing Defendants, or paid or reimbursed to the United States, for implementing and completing the Work under this Consent Decree, including, without limitation, any such costs incurred between the date that this Consent Decree is lodged with the Court and entered by the Court. "Future Performing Defendants' Response Costs" shall not include any costs incurred by the Performing Defendants after the Work has been completed or that are not incurred implementing and completing the Work under this Consent Decree, including, without limitation, costs incurred investigating, implementing, and completing remedial work, if any, related to Waste Materials emanating from the Site in groundwater.

"Future U.S. Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XII, and Paragraph 73 of Section XX. "Future U.S. Response Costs" shall also include any of the costs described above that are incurred between the date that this Consent Decree is lodged with the Court and entered by the Court.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"MDNR" shall mean the Missouri Department of Natural Resources and any successor departments or agencies of the State.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendants.

"Past PRP Response Costs" shall mean all costs incurred by any potentially responsible party, regardless of whether they are a party to this Consent Decree or the related action styled *K.C. 1986 Limited Partnership v. Reade Mfg. Co., et al.* Case No. 02-0853-CV-W-NKL (W.D. Mo), prior to the date of lodging of this Consent Decree in connection with any response activities at or near the Site, including, but not limited to, Site investigation, Site cleanup or remedial activities, oversight costs, and other direct or indirect costs relating to contamination at or emanating from the Site.

"Past U.S. Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through the date of lodging of this Consent Decree, including, without limitation, mixed funding contributions as set forth in Section XIX (Mixed Funding), plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Removal Action, set forth in the EE/CA and Section VI (Performance of the Work by Performing Defendants) below.

"Performing Defendants" shall mean The Burlington Northern and Santa Fe Railway Company ("BNSF") and U.S. Borax Inc. ("Borax").

"Plaintiff" shall mean the United States, as defined below.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Removal Action" shall mean those activities to be undertaken by the Performing Defendants to implement the response action selected by EPA from among the options set forth in the EE/CA in accordance with the final Removal Design and Removal Action Work Plans and other plans approved by EPA.

"Removal Action Work Plan" or "RAWP" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, and any amendments thereto.

"Response Action Selection" shall mean the Multi Media Alternative 5 response action selected by EPA from among the options set forth in the EE/CA.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean BNSF, the City, Hardee's, the Estate, Terracon, and Borax.

"Site" shall mean the Armour Road Superfund Site, encompassing approximately 1.8 acres, located at and adjacent to 2251 Armour Road in North Kansas City, Clay County, Missouri.

"State" shall mean the State of Missouri.

"Supervising Contractor" shall mean the principal contractor retained by the Performing Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America including its agencies,

6

departments, and instrumentalities.

"Waste Material" shall mean: (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Performing Defendants are required to perform under this Consent Decree, except those required by Section XXIV (Retention of Records).

## V. GENERAL PROVISIONS

5.  <u>Objectives of the Parties</u>  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Performing Defendants and to resolve the claims of Plaintiff against Settling Defendants as provided in this Consent Decree.

6.  <u>Commitments by Performing Defendants</u>.

    a.  Performing Defendants shall finance and perform the Work in accordance with this Consent Decree, the EE/CA, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Performing Defendants and approved by EPA pursuant to this Consent Decree.

    b.  The obligations of Performing Defendants to finance and perform the Work under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one of the Performing Defendants to implement the requirements of this Consent Decree, the remaining Performing Defendant shall complete all such requirements.

7.  <u>Compliance With Applicable Law</u>.  All activities undertaken by Performing Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.  <u>Permits</u>.

    a.  As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not

7

on-site requires a federal or state permit or approval, Performing Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. The Performing Defendants may seek relief under the provisions of Section XVI (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI. PERFORMANCE OF THE WORK BY PERFORMING DEFENDANTS

9. <u>Designation of Contractor and Project Coordinators</u>.

a. The Performing Defendants shall retain one or more contractors to perform the Work and shall notify EPA of the name(s) and qualifications of such contractor(s) within 10 days after the Effective Date. The proposed contractor must demonstrate compliance with ANSI/ASQC E-4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP"). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B0-1/002), or equivalent documentation as required by EPA. Any decision not to require submission of the contractor's QMP should be documented in a memorandum from EPA's Project Coordinator to the Site file. The Performing Defendants shall also notify EPA of the name(s) and qualification(s) of any other contractor(s) or subcontractor(s) retained to perform the Work at least 30 days prior to the commencement of such Work, unless circumstances require that the Work be commenced less than 30 days after the notice is provided. EPA retains the right to disapprove of any or all of the contractors and/or subcontractors retained by the Performing Defendants. If EPA disapproves of a selected contractor, the Performing Defendants shall retain a different contractor and shall notify EPA of that contractor's name and qualifications within 30 days of receipt of EPA's disapproval.

b. Within 30 days after the Effective Date, the Performing Defendants shall designate a Project Coordinator who shall be responsible for the administration of all actions by the Performing Defendants required by this Consent Decree and shall submit to EPA the designated Project Coordinator's name, address, telephone number, and qualifications. To the

greatest extent reasonably possible, the Project Coordinator shall be present on Site or readily available during Site work. EPA retains the right to disapprove of the designated Project Coordinator. If EPA disapproves of the designated Project Coordinator, the Performing Defendants shall retain a different Project Coordinator and shall notify EPA of that person's name, address, telephone number, and qualifications within 20 days following receipt of EPA's disapproval. Receipt by the Performing Defendants' Project Coordinator of any notice or communication from EPA relating to this Consent Decree shall constitute receipt by the Performing Defendants. All such notices and communications from EPA will also be sent to the individuals identified in Section XXV (Notices and Submissions) for the Performing Defendants at the same time that they are sent to Performing Defendants' Project Coordinator.

c.    EPA has designated David Williams of EPA Region VII's Superfund Division as its On-Scene Coordinator ("OSC") and Project Coordinator with regard to the Work. The Performing Defendants shall direct 2 copies of all submissions required by this Consent Decree to Mr. Williams at the following address:

David Williams
Superfund Division
US Environmental Protection Agency, Region VII
901 North 5th Street
Kansas City, KS  66101
Telephone 913-551-7625
Facsimile 913-551-7948

d.    MDNR has designated Pia Capell as its Project Coordinator with regard to the Work. Performing Defendants shall direct 2 copies of all submissions required by this Consent Decree to Ms. Capell at the following address:

Pia Capell
Missouri Department of Natural Resources
P.O. Box 176
Jefferson City, MO 65102
Telephone 573-751-2115
Facsimile 573-751-7869

e.    EPA, the MDNR, and the Performing Defendants shall have the right, subject to subparagraph 9.b. above, to change their designated Project Coordinators. To the extent practicable, the Performing Defendants shall notify EPA at least 10 days before such a change is made. The initial notification may be orally made, but it shall be promptly followed by a written notice.

9

10.     <u>Work to Be Performed</u>.

   a.     <u>Removal Action Work Plan</u>.  Performing Defendants shall conduct a
          removal action at the Site by performing the Work as detailed in an
          EPA-approved Removal Action Work Plan ("RAWP").  Within 45 days
          after the effective date of this Consent Decree, Performing Defendants shall
          submit to EPA and the MDNR, for review and approval by EPA, a RAWP
          prepared in accordance with this Consent Decree.  Upon approval by EPA
          the draft RAWP shall become the approved RAWP and the approved
          RAWP shall be incorporated in its entirety herein and shall be enforceable
          as a part of this Consent Decree.

   b.     <u>Removal Action Work Plan Requirements</u>.  The RAWP shall include a
          detailed description of the tasks and submissions that Performing
          Defendants will complete during the removal action and shall include a
          schedule for completing such tasks and submissions.  The RAWP shall
          include a detailed description of the removal work to be performed
          including, but not limited to, the following:

          i.     A schedule for all removal activities to be performed;

          ii.    A plan for the demolition of on-Site above-ground and below-
                 ground buildings and structures, and the subsequent off-Site disposal
                 of structure materials;

          iii.   A design plan for the excavation of soils at the Site, in general
                 agreement with the conceptual excavation plan described in the
                 EE/CA, a plan view which is included in the EE/CA;

          iv.    Plans for the excavation of surface-Site soils (0-5 feet) to meet the
                 performance standard which will be established as set forth in
                 Section 3.3 of the EE/CA;

          v.     Plans for Toxicity Characteristic Leaching Procedure ("TCLP")
                 testing of contaminated soils, and plans for treatment of such soils
                 such that any soil taken off-Site or disposed of off-Site does not
                 exceed 5.0 milligrams per liter arsenic;

          vi.    Plans for conducting air monitoring for emissions during removal
                 activities, including contingency plans in the event that emissions
                 exceed health-based standards;

          vii.   Plans for procedures that will be followed when transporting any
                 materials off-Site, including contingency plans to address any
                 release of such materials during transport; and

10

viii.    Plans for complying with the Off-Site Rule, 40 C.F.R. § 300.440.

EPA may approve, disapprove, require revisions to, or modify the draft RAWP in whole or in part, consistent with the response action selected from the EE/CA. If EPA requires revisions, Performing Defendants shall submit a revised draft RAWP within 30 days of receipt of EPA's notification of the required revisions. Performing Defendants shall implement the RAWP as approved in writing by EPA in accordance with the schedule approved by EPA. Once approved, or approved with modifications, the RAWP, the schedule, and any subsequent modifications shall be incorporated into and become fully enforceable under this Consent Decree.

c.    <u>Removal Action Implementation</u>. Performing Defendants shall conduct a removal action at the Site by performing the Work in accordance with the requirements, including the schedule, set forth in the approved RAWP. Performing Defendants shall not commence any Work except in conformance with the terms of this Consent Decree. Performing Defendants shall not commence implementation of the RAWP developed hereunder until receiving written EPA approval pursuant to Paragraph 10(b) above.

d.    <u>Health and Safety Plan</u>. Within 45 days after the Effective Date, Performing Defendants shall submit for EPA review and comment a Health and Safety Plan ("HSP") that ensures the protection of the public health and safety during performance of on-Site work under this Consent Decree. The HSP shall be prepared in accordance with EPA's Standard Operating Safety Guide (PUB 9285.1-03, PB 92-963414, June 1992). In addition, the HSP shall comply with all currently applicable Occupational Safety and Health Administration ("OSHA") regulations found at 29 C.F.R. Part 1910 and shall include, at a minimum, the following:

i.    Assessment of chemical and physical hazards at all relevant locations;

ii.    Identification of Site control measures and required levels of protection and safety equipment;

iii.    Field monitoring requirements;

iv.    Equipment and personnel decontamination and residual management;

v.    Training and medical monitoring requirements; and

vi.    Emergency planning and emergency contacts.

11

If EPA determines that it is appropriate, the HSP shall also include contingency planning. Performing Defendants shall incorporate all changes to the HSP recommended by EPA and shall implement the HSP during the pendency of the removal action.

e. <u>Quality Assurance and Sampling</u>.

   i. Within 45 days of the Effective Date of this Consent Decree, and before any sampling related to Work under this Consent Decree commences, Performing Defendants shall submit to EPA for review and comment a Quality Assurance Project Plan ("QAPP") which will describe all sampling and analysis procedures to be followed to document the type and quality of data needed to satisfy the requirements of this Consent Decree and to provide a blueprint for collecting and assessing those data which are to be collected to meet the requirements of this Consent Decree. The QAPP shall comply with the requirements of the document entitled <u>EPA Requirements for Quality Assurance Project Plans for Environmental Data Operations</u>, EPA QA/R-5, November 1999.

   ii. All sampling and analyses performed pursuant to this Consent Decree shall conform to EPA direction, approval, and guidance regarding sampling, quality assurance/quality control ("QA/QC"), data validation, and chain of custody procedures. Performing Defendants shall ensure that the laboratory used to perform the analyses participates in a QA/QC program that complies with the appropriate EPA guidance. Performing Defendants shall follow, as appropriate, "Quality Assurance/Quality Control Guidance for Removal Activities: Sampling QA/QC Plan and Data Validation Procedures" (OSWER Directive No. 9360.4-01, April 1, 1990), as guidance for QA/QC and sampling. Performing Defendants shall only use laboratories that have a documented Quality System that complies with ANSI/ASQC E-4 1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2) (EPA/240/B-01/002, March 2001)," or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.

   iii. Upon request by EPA, Performing Defendants shall have such a laboratory analyze samples submitted by EPA for QA monitoring.

12

Performing Defendants shall provide to EPA the QA/QC procedures followed by all sampling teams and laboratories performing data collection and/or analysis.

    iv.    Upon request by EPA, Performing Defendants shall allow EPA or its authorized representatives to take split and/or duplicate samples. Performing Defendants shall notify EPA not less than 30 days prior to any sample collection activity, unless shorter notice is agreed to by EPA. EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow Performing Defendants to take split or duplicate samples of any samples it takes as part of its oversight of Performing Defendants' implementation of the Work.

    f.    <u>Post-Removal Site Control</u>. In accordance with the schedule in the RAWP, or as otherwise directed by EPA, Performing Defendants shall submit a proposal for post-removal Site control consistent with Section 300.415(l) of the NCP and OSWER Directive No. 9360.2-02. Upon EPA approval, Performing Defendants shall implement such controls and shall provide EPA with documentation of all post-removal Site control arrangements.

## VII.  <u>ACCESS</u>

11.    If the Site, or any other property where access and/or land use restrictions are needed to implement this Consent Decree, is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

    a.    Commencing on the date of lodging of this Consent Decree, provide the United States and its representatives, including EPA and its contractors, and the Performing Defendants, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

    i.    Monitoring the Work;

    ii.    Verifying any data or information submitted to the United States;

    iii.    Conducting investigations relating to contamination at or near the Site;

    iv.    Obtaining samples;

    v.    Assessing the need for, planning, or implementing additional response actions at or near the Site;

13

vi.     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

vii.    Implementing the Work in accordance with this Consent Decree, including, without limitation, the conditions set forth in Paragraph 75 of this Consent Decree;

viii.   Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Performing Defendants or their agents, consistent with Section XXIII (Access to Information);

ix.     Assessing Performing Defendants' compliance with this Consent Decree; and

x.      Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

b.      Commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the measures to be performed pursuant to this Consent Decree.

c.      Within 30 days of the effective date of this Consent Decree, submit to EPA for review and approval a restrictive covenant and easement, substantially in the form attached hereto as <u>Appendix B</u>.  Within 15 days of such Settling Defendant's receipt of EPA's approval of the restrictive covenant and easement such Settling Defendant shall cause such restrictive covenant and easement to be recorded with the Recorder of Deeds office in Clay County, Missouri.  Such Settling Defendant shall submit to EPA a copy of the restrictive covenant and easement evidencing recordation within 30 days of receipt by such Settling Defendant of a copy of the recorded restrictive covenant and easement from the Recorder of Deeds office.

12.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Performing Defendants, Performing Defendants shall use best efforts to secure from such persons:

a.      an agreement to provide access thereto for Performing Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 11.a. of this Consent Decree;

14

b.      an agreement, enforceable by the Performing Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the measures to be performed pursuant to this Consent Decree; and

c.      a restrictive covenant and easement substantially in the form attached hereto as <u>Appendix B</u>.

13.      If, after using their best efforts, Performing Defendants are unable to obtain the access or land/water use restriction agreements required by Paragraph 12 of this Consent Decree within 45 days of the date of entry of this Consent Decree, Performing Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Performing Defendants have taken to attempt to comply with Paragraph 12 of this Consent Decree. The United States may, as it deems appropriate, assist Performing Defendants in obtaining access or the land/water use restrictions.  Performing Defendants shall reimburse the United States in accordance with the procedures in Section XIV (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access or land/water use restrictions, including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

14.      If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to perform the Work, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Performing Defendants shall cooperate with EPA's efforts to secure such governmental controls.

15.      Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## VIII.  REPORTING REQUIREMENTS

16.      <u>Progress Reports</u>.  The Performing Defendants shall submit a written progress report to EPA's and MDNR's Project Coordinators concerning actions undertaken pursuant to this Consent Decree every 30th day after the Effective Date and continuing until termination of this Consent Decree, unless otherwise directed in writing by EPA's Project Coordinator.  These reports shall describe all significant developments during the preceding reporting period, including the actions performed and any problems encountered, analytical data received during the reporting period, and the developments anticipated during the next reporting period, including a schedule of actions to be performed, anticipated problems, and planned resolution of past or anticipated problems.

17.     Upon request by EPA, and in lieu of submitting physical copies, the Performing Defendants shall submit all plans, reports or other submissions in electronic form.

18.     Final Report.  Within 30 days after completion of all Work required by this Consent Decree, the Performing Defendants shall submit for EPA review and approval a Final Report summarizing the actions taken to comply with this Consent Decree.  The Final Report shall conform, at a minimum, with the requirements set forth in Section 300.165 of the NCP entitled "OSC Reports."  The Final Report shall include a good faith estimate of total costs or a statement of actual costs incurred in complying with the Consent Decree, a listing of quantities and types of materials removed off-Site or handled on-Site, a discussion of removal and disposal options considered for those materials, a listing of the ultimate destination(s) of those materials, a presentation of the analytical results of all sampling and analyses performed, and accompanying appendices containing all relevant documentation generated during the removal action (e.g., manifests, invoices, bills, contracts, and permits).  The Final Report shall also include the following certification signed by a person who supervised or directed the preparation of that report:

> "Under penalty of law, I certify that to the best of my knowledge, after appropriate inquiries of all relevant persons involved in the preparation of the report, the information submitted is true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

19.     Upon the occurrence of any event during performance of the Work that Performing Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), Performing Defendants shall, within 24 hours of their having first acquired knowledge of such event, orally notify the EPA Project Coordinator or, in the event that the EPA Project Coordinator is unavailable, the Chief of EPA Region VII Superfund Division's Emergency/Fund Lead Removal Branch.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

20.     Within 18 days of providing the notice required by the preceding paragraph to EPA, Performing Defendants shall furnish to Plaintiff a written report, signed by the Performing Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such an event referred to in the preceding paragraph, Performing Defendants shall submit a report to EPA setting forth all actions taken in response thereto.

21.     All reports and other documents submitted by Performing Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Performing Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Performing Defendants.

16

# IX.  EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

22.    After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall, consistent with the response action selected by EPA from the EE/CA: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Performing Defendants modify the submission; or (e) any combination of the above.  However, EPA shall not modify a submission without first providing Performing Defendants at least one notice of deficiency and an opportunity to cure within 14 days, or such longer period of time as specified by EPA in such notice, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

23.    In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 22(a), (b), or (c), Performing Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XVII (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 22(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XVIII (Stipulated Penalties).

24.    Resubmission of Plans.

    a.    Upon receipt of a notice of disapproval pursuant to Paragraph 22(d), Performing Defendants shall, within 14 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XVIII, shall accrue during the 14-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 25 and 26.

    b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 22(d), Performing Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Performing Defendants of any liability for stipulated penalties under Section XVIII (Stipulated Penalties).

25.    In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Performing Defendants to correct the

17

deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report or other item. Performing Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XVII (Dispute Resolution).

26.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Performing Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Performing Defendants invoke the dispute resolution procedures set forth in Section XVII (Dispute Resolution) and EPA's action is overturned pursuant to that Section. The provisions of Section XVII (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

27.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## X.  ASSURANCE OF ABILITY TO COMPLETE WORK

28.     Within 30 days of entry of this Consent Decree, Performing Defendants shall establish and maintain financial security in the amount of $5,200,000 in one or more of the following forms:

      a.     A surety bond guaranteeing performance of the Work;

      b.     One or more irrevocable letters of credit equalling the total estimated cost of the Work;

      c.     A trust fund;

      d.     A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with at least one of the Performing Defendants; or

      e.     A demonstration that one or more of the Performing Defendants satisfy the requirements of 40 C.F.R. § 264.143(f).

29.     If the Performing Defendants seek to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to Paragraph 28.d of this Consent Decree, Performing

18

Defendants shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. § 264.143(f). If Performing Defendants seek to demonstrate their ability to complete the Work by means of the financial test or the corporate guarantee pursuant to Paragraph 28.d. or 28.e., they shall resubmit sworn statements conveying the information required by 40 C.F.R. § 264.143(f) annually, on the anniversary of the Effective Date. In the event that EPA, determines at any time that the financial assurances provided pursuant to this Section are inadequate, Performing Defendants shall, within 30 days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 28 of this Consent Decree. Performing Defendants' inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

30.     If Performing Defendants can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 28 above after entry of this Consent Decree, Performing Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Performing Defendants and EPA, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed. Performing Defendants shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA. In the event of a dispute, Performing Defendants may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

31.     Performing Defendants may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, Performing Defendants may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XI.  CERTIFICATION OF COMPLETION

32.     Completion of the Work.

      a.     Within 90 days after Performing Defendants conclude that all phases of the Work have been fully performed, Performing Defendants shall schedule and conduct a pre-certification inspection to be attended by Performing Defendants and EPA. If, after the pre-certification inspection, the Performing Defendants still believe that the Work has been fully performed, Performing Defendants shall submit a written report by a registered professional engineer or registered geologist stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree ("Request for Certification of Completion"). The Request for Certification of Completion shall contain the following statement, signed by a responsible corporate official of a Performing Defendant or the Performing Defendants' Project Coordinator:

19

"To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

If, after review of the Request for Certification of Completion, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Performing Defendants in writing of the activities that must be undertaken by Performing Defendants pursuant to this Consent Decree to complete the Work. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the RAWP or require the Performing Defendants to submit a schedule to EPA for approval pursuant to Section IX (EPA Approval of Plans and Other Submissions). Performing Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XVII (Dispute Resolution).

b.  If EPA concludes, based on the initial or any subsequent Request for Certification of Completion submitted by Performing Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Performing Defendants in writing as soon as practicable.

## XII. EMERGENCY RESPONSE

33.  In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Performing Defendants shall, subject to Paragraph 34, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, the Chief of EPA Region VII Superfund Division's Emergency/Fund Lead Removal Branch. Performing Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to this Consent Decree. In the event that Performing Defendants fail to take appropriate response action as required by this Section, and EPA takes such action instead, Performing Defendants shall reimburse EPA all costs of the response action not inconsistent with the NCP pursuant to Section XIV (Payments for Response Costs).

20

34.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XX (Covenants Not to Sue by Plaintiff).

## XIII.  PAYMENTS BY CASH-OUT PARTIES

35.     <u>Payment by the Estate</u>.  The Estate has paid to an escrow account established by the Performing Defendants the sum of $400,000.  The escrow account shall be retained and used by the Performing Defendants to conduct and finance the Work.

36.     <u>Payment by the City</u>.  Within 5 days of the Effective Date the City shall pay to an escrow account established by the Performing Defendants the sum of $30,000.  The escrow account shall be retained and used by the Performing Defendants to conduct and finance the Work. Payment shall be made by electronic funds transfer in accordance with instructions provided by the Performing Defendants.  At the time of the transfer the City shall send notice to EPA's Project Coordinator that payment has been made.  The City shall also be liable to the Performing Defendants for any Interest or other costs and fees incurred by Performing Defendants attributable to any delay in the timely payment of the $30,000.

37.     <u>Payment by Hardee's and Terracon</u>.  Within 5 days of the Effective Date Hardee's shall, on its and Terracon's behalf, pay to an escrow account established by the Performing Defendants the sum of $100,000.  The escrow account shall be retained and used by the Performing Defendants to conduct and finance the Work.  Payment shall be made by electronic funds transfer in accordance with instructions provided by the Performing Defendants.  At the time of the transfer Hardee's shall send notice to EPA's Project Coordinator that payment has been made.   Hardee's shall also be liable to the Performing Defendants for any Interest or other costs and fees incurred by Performing Defendants attributable to any delay in the timely payment of the $100,000.

## XIV.  PAYMENTS FOR RESPONSE COSTS

38.     In the event that EPA assumes the responsibility to implement the Work in accordance with Paragraph 75 (Work Takeover) Performing Defendants shall pay to EPA all Future U.S. Response Costs not inconsistent with the NCP associated with the Work, that are incurred after the date that EPA assumes responsibility for implementing the Work.  In that event, on a periodic basis the United States will send to Performing Defendants a bill requiring payment which includes an EPA-prepared cost summary, which includes direct and indirect costs incurred by EPA and its contractors, and a DOJ-prepared cost summary which reflects costs incurred by DOJ and its contractors, if any.  Performing Defendants shall make all payments within 30 days of Performing Defendants' receipt of each bill requiring payment, except as otherwise provided in

21

Paragraph 39. All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substance Superfund," shall be mailed to Mellon Bank, EPA Region VII, P.O. Box 36078M, Pittsburgh, Pennsylvania 15251, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Site/Spill ID Number "07WS," and DOJ Case Number 90-11-3-08035. At the time of payment, Settling Defendant(s) shall send a copy of the transmittal of payment and a copy of the check to EPA's Project Coordinator. Payment made hereunder will be deposited in the Armour Road Superfund Site Special Account within the Hazardous Substance Superfund, and may be transferred by EPA to the Hazardous Substance Superfund.

39. Performing Defendants may contest payment of all or any portion of Future U.S. Response Costs under Paragraph 38 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be in writing within 30 days of receipt of the bill and must be sent to the United States pursuant to Section XXV (Notices and Submissions). Any such objection shall specifically identify the contested Future U.S. Response Costs and the basis for objection. In the event of an objection, the Performing Defendants shall within the 30 day period pay all uncontested Future U.S. Response Costs to the United States in the manner described in Paragraph 38. Simultaneously, the Performing Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Missouri and remit to that escrow account funds equivalent to the amount of the contested Future U.S. Response Costs. The Performing Defendants shall send to the United States, as provided in Section XXV (Notices and Submissions), a copy of the transmittal letter and check in the amount of the uncontested Future U.S. Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Performing Defendants shall initiate the Dispute Resolution procedures in Section XVII (Dispute Resolution). If the United States prevails in the dispute, within 5 working days of the final resolution of the dispute, the Performing Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 38. If the Performing Defendants prevail concerning any aspect of the contested costs, the Performing Defendants shall pay that portion of the costs (plus associated accrued interest), if any, for which they did not prevail to the United States in the manner described in Paragraph 38; Performing Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XVII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Performing Defendants' obligation to reimburse the United States for its Future U.S. Response Costs.

40. In the event that the payments required by Paragraph 38 are not made within 30 days of the Performing Defendants' receipt of the bill, Performing Defendants shall pay Interest on the unpaid balance. The Interest on Future U.S. Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Performing Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Performing Defendants' failure to make timely

22

payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 55. The Performing Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 38.

## XV. INDEMNIFICATION AND INSURANCE

41. <u>Performing Defendants' Indemnification of the United States</u>.

    a.    The United States does not assume any liability by entering into this agreement or by virtue of any designation of Performing Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Performing Defendants shall indemnify, save and hold harmless the United States, and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Performing Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Performing Defendants as EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Performing Defendants agree to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Performing Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of Performing Defendants in carrying out activities pursuant to this Consent Decree. Neither the Performing Defendants nor any such contractor shall be considered an agent of the United States.

    b.    The United States shall give Performing Defendants notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 41 as soon as practicable, and will consult with Performing Defendants prior to settling such claim.

42. Performing Defendants waive all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States arising from or on account of any contract, agreement, or arrangement between any one or more of Performing Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Performing Defendants shall indemnify and hold harmless the United States with respect to any and all claims for damages or

23

reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Performing Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

43.     No later than 15 days before commencing any on-site Work, Performing Defendants shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion pursuant to Subparagraph 32.b. of Section XI (Certification of Completion) comprehensive general liability insurance with limits of $1,000,000, combined single limit, and automobile liability insurance with limits of $1,000,000, combined single limit, naming the United States as additional insured.  In addition, for the duration of this Consent Decree, Performing Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Performing Defendants in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent Decree, Performing Defendants shall provide to EPA certificates of such insurance and a copy of each insurance policy.  Performing Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Performing Defendants demonstrate by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Performing Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVI.  FORCE MAJEURE

44.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Performing Defendants, of any entity controlled by Performing Defendants, or of Performing Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Performing Defendants' best efforts to fulfill the obligation.  The requirement that the Performing Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event:  (1) as it is occurring, and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

45.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Performing Defendants shall orally notify EPA's Project Coordinator or, in his absence, the Chief of EPA Region VII's Emergency/Fund-Lead Removal Branch, Superfund Division, within 3 days of when Performing Defendants first knew that the event might cause a delay.  Within 7 days thereafter, Performing Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Performing Defendants' rationale for

24

attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Performing Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Performing Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Performing Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Performing Defendants shall be deemed to know of any circumstance of which Performing Defendants, any entity controlled by Performing Defendants, or Performing Defendants' contractors knew or should have known.

      46.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Performing Defendants in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Performing Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

      47.    If the Performing Defendants elect to invoke the dispute resolution procedures set forth in Section XVII (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Performing Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Performing Defendants complied with the requirements of Paragraphs 44 and 45, above. If Performing Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Performing Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XVII. DISPUTE RESOLUTION

      48.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.

      49.    Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period

for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends a written Notice of Dispute to all of the other parties to the dispute.

50.     Statements of Position.

a.     In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 14 days after the conclusion of the informal negotiation period, the affected Settling Defendant(s) invoke(s) the formal dispute resolution procedures of this Section by serving on the United States and all other Settling Defendants a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant(s). The Statement of Position shall specify the Settling Defendant's(s') position as to whether formal dispute resolution should proceed under Paragraph 51 or Paragraph 52.

b.     Within 14 days after receipt of the affected Settling Defendant's('s) Statement of Position, EPA will serve on all Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 51 or 52. Within 14 days after receipt of EPA's Statement of Position, the affected Settling Defendant(s) may submit a Reply.

c.     If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 51 or 52, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the affected Settling Defendant(s) ultimately appeal(s) to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 51 and 52.

51.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Performing Defendants

26

regarding the validity of the Response Action Selection.

     a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

     b.     The Director of EPA Region VII's Superfund Division will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 51.a. This decision shall be binding upon the Settling Defendant(s), subject only to the right to seek judicial review pursuant to Paragraph 51.c. and d.

     c.     Any administrative decision made by EPA pursuant to Paragraph 50.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant(s) with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to the Settling Defendant's(s') motion.

     d.     In proceedings on any dispute governed by this Paragraph, the Settling Defendant(s) shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 51.a.

52.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph. Following receipt of the Settling Defendant's(s') Statement of Position submitted pursuant to Paragraph 50, the Director of EPA Region VII's Superfund Division, will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Settling Defendant(s) unless, within 10 days of receipt of the decision, the Settling Defendant(s) file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to the Settling Defendant's(s') motion.

53.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties

27

with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 61. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendant(s) does/do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XVIII (Stipulated Penalties).

## XVIII. STIPULATED PENALTIES

54. The Cash-Out Parties shall each be liable to the United States for stipulated penalties for failure to comply with the payment requirements applicable to each of them as set forth in Section XIII (Payments by Cash-Out Parties) of this Consent Decree unless excused under Section XVI (Force Majeure). Stipulated penalties shall accrue in the amount of $1,000 per day for each and every day that payment to the escrow account is delayed.

55. The Performing Defendants shall be liable to the United States for stipulated penalties in the amounts set forth below for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVI (Force Majeure). "Compliance" by the Performing Defendants shall include completion of the Work in accordance with all applicable requirements of law, this Consent Decree, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

      a.      For failure to: (1) submit a monthly progress report; (2) submit the Final Report; (3) notify EPA of the names and qualifications of contractors; or (4) designate a Project Coordinator as prescribed in this Consent Decree: $250 per day for the first through seventh days of noncompliance and $500 per day for the eighth day and each succeeding day of noncompliance thereafter.

      b.      For failure to submit the proposal for post-removal Site control as prescribed in this Consent Decree: $500 per day for the first through seventh days of noncompliance and $1,000 per day for the eighth day and each succeeding day of noncompliance thereafter.

      c.      For failure to complete the Removal Action in accordance with the requirements of the RAWP, including the project schedule: $750 per day for the first through seventh days of noncompliance and $1,500 per day for the eighth day and each succeeding day of noncompliance thereafter, up until the time that EPA assumes responsibility to perform the Removal Action pursuant to Paragraph 56.

56. In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 75 of Section XX (Covenants Not to Sue by Plaintiffs), EPA will so notify Performing Defendants in writing and Performing Defendants shall be liable for a stipulated

penalty in the amount of: (a) $300,000 if EPA assumes between 1% and 10% of the Work; (ii) $500,000 if EPA assumes between 11% and 65% of the Work; and (iii) $1,000,000 if EPA assumes between 66% and 100% of the Work. For purposes of this provision, the relevant percentage shall be determined based on the estimated cost of EPA completing the Work it has assumed as compared to $6,990,000.

57. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section IX (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Performing Defendants of any deficiency; (2) with respect to a decision by the Director of the Superfund Division, EPA Region VII, under Paragraph 51.b. or 52 of Section XVII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's(s') reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XVII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

58. Following EPA's determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, EPA will give Settling Defendants written notification of the same as soon as practicable and describe the noncompliance. EPA will send to Settling Defendants a written demand for the payment of the penalties. However, subject to the provisions in Paragraph 57, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the Performing Defendants of a violation.

59. Except as set forth in Section IX (EPA Approval of Plans and Other Submissions), all penalties accruing under this Section shall be due and payable to the United States within 30 days of a Settling Defendant's(s') receipt from EPA of a demand for payment of the penalties, unless Performing Defendants invoke the Dispute Resolution procedures under Section XVII (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check(s) made payable to "EPA Hazardous Substance Superfund," shall be mailed to Mellon Bank, EPA Region VII, P.O. Box 36078M, Pittsburgh, Pennsylvania 15251, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Site/Spill ID Number "07WS," and DOJ Case Number 90-11-3-08035. At the time of payment, Settling Defendant(s) shall send a copy of the transmittal of payment and a copy of the check to EPA's Project Coordinator. Payment made hereunder will be deposited in the Hazardous Substance Superfund.

60. The payment of penalties shall not alter in any way Performing Defendants' obligation to complete the performance of the Work required under this Consent Decree. However, any stipulated penalties for the non-performance or inadequate performance of any

29

Work shall cease to accrue at the time EPA assumes that Work pursuant to Paragraph 75, and when Performing Defendants pay the penalty established under Paragraph 56 of this Decree.

61.     Penalties shall continue to accrue as provided in Paragraph 57 during any dispute resolution period, but need not be paid until the following:

      a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 30 days of the agreement or the receipt of EPA's decision or order, unless waived or reduced in amount by EPA within its sole discretion;

      b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant(s) shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

      c.     If the District Court's decision is appealed by any Party, Settling Defendants shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant(s) to the extent that it/they prevail.

62.     If Settling Defendant(s) fail(s) to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as Interest.  Settling Defendant(s) shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 57.

63.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of a Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

64.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

# XIX.  MIXED FUNDING

65.     In accordance with Section 122(b)(1) of CERCLA, 42 U.S.C. § 9622(b)(1), this Section, and Appendix C of this Consent Decree, EPA will reimburse the Performing Defendants for certain costs that they have actually incurred and paid in performing the Work. In accordance with Appendix C of this Consent Decree, the Performing Defendants may submit a claim for reimbursement to the Hazardous Substance Superfund (the "Superfund") for the actual costs incurred and paid by the Performing Defendants in performing the Work. In no event shall such claim include any of the Performing Defendants' response costs that were incurred prior to the Effective Date of this Consent Decree. Reimbursement from the Superfund of the amount claimed by the Performing Defendants shall be subject to the applicable claims and audit procedures set forth at 40 C.F.R. Part 307 and as specified in Appendix C.

66.     If EPA denies the claim in whole or in part, it will provide to Performing Defendants a written explanation for such denial. If the Performing Defendants are dissatisfied with EPA's decision, the Performing Defendants may within 30 days after receiving notice of EPA's decision, request an administrative hearing as provided in Section 112(b)(2) of CERCLA, 42 U.S.C. § 9612(b)(2).

67.     Payment of any claim under this Section shall be subject to the Performing Defendants' subrogating to the United States their rights as claimants to recover from the person(s) responsible or liable for those costs for which the Performing Defendants are compensated from the Superfund.

68.     The Performing Defendants and their contractors shall assist in any cost recovery action which may be initiated by the United States by furnishing the personnel, documents, and materials needed to assist EPA in the collection of evidence to document work performed and costs expended by the Performing Defendants or their contractors at the Site; providing all requested assistance in the interpretation of such evidence and costs; and providing supporting testimony. All of the Performing Defendants' contracts which implement the Preauthorization Decision Document shall include a specific requirement that the contractors agree to provide this cost recovery assistance. Performing Defendants and their contractors shall not, however, be obligated to furnish any testimony, affidavits, declarations, documents, or other materials that are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege or doctrine recognized by federal law.

69.     The Performing Defendants shall not make any claims against the Superfund for costs associated with the Work performed under this Consent Decree, except as provided in this Section. This Paragraph shall not limit Performing Defendants' ability to make claims against the Superfund for future work performed at the Site not covered by the covenants not to sue by Settling Defendants as set forth in Section XXI of this Consent Decree.

## XX.  COVENANTS NOT TO SUE BY PLAINTIFF

70.     The Estate. In consideration of the payment that has been made by the Estate pursuant to Section XIII of this Consent Decree and except as otherwise specifically provided in

31

Paragraph 74 of this Consent Decree, EPA covenants not to sue or to take administrative action against the Estate pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, for: (1) the performance of the Work, (2) the recovery of Past U.S. Response Costs and Future U.S. Response Costs, and (3) future work and the cost of such work, which may be required by EPA to respond to the release of Waste Materials at the Site. This covenant not to sue shall take effect upon the effective date of this Consent Decree. This covenant not to sue extends only to the Estate and does not extend to any other person.

71. The City. In consideration of the payment that will be made by the City pursuant to Section XIII of this Consent Decree, and except as otherwise specifically provided in Paragraph 74 of this Consent Decree, EPA covenants not to sue or to take administrative action against the City pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, for: (1) the performance of the Work, (2) the recovery of Past U.S. Response Costs and Future U.S. Response Costs, and (3) future work and the cost of such work, which may be required by EPA to respond to the release of Waste Materials at the Site. This covenant not to sue shall take effect upon certification to EPA by the Performing Defendants that the payment required to be made by the City as provided for in Section XIII has been received. This covenant not to sue extends only to the City and does not extend to any other person.

72. Hardee's and Terracon. In consideration of the payment that will be made by Hardee's and Terracon pursuant to Section XIII of this Consent Decree, and except as otherwise specifically provided in Paragraph 74 of this Consent Decree, EPA covenants not to sue or to take administrative action against Hardee's and Terracon pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, for: (1) the performance of the Work, (2) the recovery of Past U.S. Response Costs and Future U.S. Response Costs, and (3) future work and the cost of such work, which may be required by EPA prior to the selection by EPA of a groundwater remedy for or relating to the Site, including, without limitation, groundwater monitoring and the preparation of any report, such as a remedial investigation/feasibility study, relating to groundwater contamination at the Site. This covenant shall not extend to response costs relating to groundwater contamination incurred by EPA after the selection of a groundwater response relating to the Site, if any such response is selected. This covenant not to sue shall take effect upon certification to EPA by the Performing Defendants that the payment required to be made by Hardee's and Terracon as provided for in Section XIII has been received. This covenant not to sue extends only to Hardee's and Terracon and does not extend to any other person.

73. Performing Defendants. In consideration of the actions that will be performed by the Performing Defendants under the terms of this Consent Decree, and except as otherwise specifically provided in this Consent Decree, EPA covenants not to sue or to take administrative action against the Performing Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and Section 7003 of RCRA, 42 U.S.C. § 6973, for performance of the Work and for recovery of Past U.S. Response Costs and Future U.S. Response Costs. This covenant not to sue shall take effect upon EPA's issuance of the written notice of completion of work as provided for in Section XI. This covenant not to sue is conditioned upon the complete and

32

satisfactory performance by the Performing Defendants of the Work. This covenant not to sue extends only to Performing Defendants and does not extend to any other person.

74. <u>General reservations of rights</u>. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

        a.      Claims based on a failure by Settling Defendants to meet any requirement of this Consent Decree;

        b.      Except with regard to the Estate and the City, liability for costs not included within the definitions of Past U.S. Response Costs or Future U.S. Response Costs;

        c.      Except with regard to the Estate and the City, liability for the performance of response actions other than the Work;

        d.      Criminal liability;

        e.      Liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        f.      Liability arising from the past, present, or future disposal, release or threat of release of Waste Materials outside of the Site, excluding liability for costs incurred prior to the entry of this Consent Decree associated with the past disposal and release or threat of release of Waste Material on property investigated as part of the EE/CA process; and

        g.      Liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry related to the Site.

75. <u>Work Takeover</u>. In the event EPA determines that Performing Defendants have ceased implementation of any portion of the Work, are seriously or repeatedly deficient or late in their performance of the Work, or are implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary. Except in that instance where EPA has determined, in its sole discretion, that an endangerment to human health or the environment may occur if Work takeover is not immediately taken by EPA, EPA will provide to the Performing Defendants written notice 10 days prior to taking such action, and in such notice shall describe which aspects of the Work that EPA intends to assume responsibility for performing and why. Performing Defendants may invoke the procedures set forth in Section XVII (Dispute Resolution),

33

Paragraph 51, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the United States in performing the Work pursuant to this Paragraph shall be considered Future U.S. Response Costs that Performing Defendants shall pay pursuant to Section XIV (Payment for Response Costs).

76. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXI. COVENANTS BY SETTLING DEFENDANTS

77. Covenant Not to Sue by the Estate and the City. Subject to the reservations in Paragraph 80, the Estate and the City hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past and future response actions, and Past and Future U.S. Response Costs as defined herein or this Consent Decree, including, but not limited to:

    a.    Any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

    b.    Any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site; or

    c.    Any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

78. Covenant Not to Sue by Hardee's and Terracon. Subject to the reservations in Paragraph 80, Hardee's and Terracon hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions, response costs incurred between the date of lodging of this Decree and the selection by EPA of a groundwater remedy, and Past and Future U.S. Response Costs as defined herein or this Consent Decree, including, but not limited to:

    a.    Any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

    b.    Any claims against the United States, including any department, agency or

34

instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site, or

    c.    Any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

79.    <u>Covenant Not to Sue by the Performing Defendants</u>.  Subject to the reservations in Paragraph 80, the Performing Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States with respect to the Work, past response actions, and Past and Future U.S. Response Costs as defined in this Consent Decree, including, but not limited to:

    a.    Any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law.  However, this covenant is without prejudice to, and Borax reserves the right to submit a claim for reimbursement from the Hazardous Substance Superfund for certain costs incurred and paid by it with regard to innovative technology risk sharing, as provided in the First Amendment to Administrative Order on Consent, EPA Region VII Docket No. VII-97-F-0005;

    b.    Any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site; or

    c.    Any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

80.    The Performing Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Performing Defendants' plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign

35

immunity is found in a statute other than CERCLA.

## XXII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

81.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

82.     The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for matters addressed in this Consent Decree. For the purposes of this Section "Matters Addressed" shall mean: (1) as to the Estate and the City, the Work, Past U.S. Response Cost, Past PRP Response Costs, and all future response costs relating to the Site; (2) as to Hardee's and Terracon, the Work, Past U.S. Response Costs, Past PRP Response Costs, Future U.S. Response Costs, and future groundwater related costs incurred prior to any selection by EPA of a groundwater remedy; and (3) as to Performing Defendants, the Work, Past U.S. Response Costs, Past PRP Response Costs, and Future U.S. Response Costs. Notwithstanding the provisions set forth above in this Paragraph, the Performing Defendants may seek to recover or reallocate their Future Performing Defendants' Response Costs and Past PRP Response Costs from or among each other.

83.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XX (Covenants Not to Sue by Plaintiffs).

## XXIII. ACCESS TO INFORMATION

84.     Settling Defendants shall provide to EPA, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

36

85.    Business Confidential and Privileged Documents.

    a.    Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). All such submissions shall be handled in accordance with the provisions specified in 40 C.F.R. Part 2, Subpart B.  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, the public may be given access to such documents or information without further notice to Settling Defendants.

    b.    The Settling Defendants may assert that certain documents, records and other information requested by EPA are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information; and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

86.    No claim of confidentiality shall be made with respect to any Site-related data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXIV.  RETENTION OF RECORDS

87.    Until 10 years after the Settling Defendants' receipt of EPA's notification pursuant to Paragraph 32.b. of Section XI (Certification of Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its potential liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all documents and records that relate to the potential liability of any other person under CERCLA with respect to the Site.  Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or

which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that each Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

88.     At the conclusion of this document retention period, Settling Defendants shall notify the United States  at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendants shall deliver any such records or documents to EPA. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege, work-product doctrine or any other privilege or doctrine recognized by federal law.  If a Settling Defendant asserts such a privilege, it shall provide the Plaintiffs with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

89.     Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXV.  NOTICES AND SUBMISSIONS

90.     Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and the Settling Defendants, respectively.

As to the United States:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C.  20044-7611

38

Re: DJ # 90-11-3-08035

As to EPA:

      Director, Superfund Division
      United States Environmental Protection Agency
      Region VII
      901 North 5th Street
      Kansas City, KS  66101

As to U.S. Borax, Inc.:

      Michèle B. Corash, Esq.
      Brooks M. Beard, Esq.
      Morrison & Foerster LLP
      425 Market Street
      San Francisco, CA  94105
      (T) 415-268-7000
      (F) 415-268-7522

As to The Burlington Northern and Santa Fe Railway Company:

      Thomas A. Ryan, Esq.
      Lathrop & Gage LC
      2345 Grand Blvd.
      Suite 2800
      Kansas City, MO   64108-2612

As to City of North Kansas City, Missouri:

      Thomas E. Barzee, Esq.
      City Counselor
      City Hall
      2010 Howell
      North Kansas City, MO 64116

As to Hardee's Food Systems, Inc.:

      Stephen W. Earp, Esq.
      Smith Moore LLP
      First Union Tower
      300 North Greene Street
      Suite 1400
      P.O. Box 21927
      Greensboro, NC  27420

As to Terracon, Inc.:

      Thomas R. Buchanan, Esq.
      McDowell, Rice, Smith & Gaar PC

The Skelly Building
605 West 47th Street
Kansas City, MO 64112-1905

<u>As to Nancy Reade Forster, Personal Representative of the Estate of Charles F. Reade, Sr.:</u>

David E. Shay, Esq.
Seigfreid, Bingham, Levy, Selzer & Gee
911 Main Street
Suite 2800
Kansas City, MO   64105

## XXVI.  EFFECTIVE DATE

91.     The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XXVII.  RETENTION OF JURISDICTION

92.     This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of each such Settling Defendant's performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XVII (Dispute Resolution) hereof.

## XXVIII.  APPENDICES

93.     The following appendices are attached to and incorporated into this Consent Decree:

Appendix A is the EE/CA
Appendix B is the Model Restrictive Covenant and Easement
Appendix C is the Preauthorization Decision Document

## XXIX.  MODIFICATION

94.     Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Performing Defendants.  All such modifications shall be made in writing.

95.     Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

40

## XXX. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

96.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice. The United States will provide to the Settling Defendants copies of any comments formally submitted regarding the Consent Decree during the public comment period.

97.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXI. SIGNATORIES/SERVICE

98.     Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

99.     Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

100.    Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXII. FINAL JUDGMENT

101.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree and except for a Confidential Interim Allocation Agreement between the Performing

Defendants.

       102.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS   2nd   DAY OF June, 2004.

                                           s/ Nanette K. Laughrey
                                             Nanette K. Laughrey
                                          United States District Judge

**FOR THE UNITED STATES OF AMERICA**


    3/31/04                                 /s/ Catherine R. McCabe

Date                                       CATHERINE R. McCABE (New York Bar #1264779)
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


    4/5/04                                  /s/ David L. Dain

Date                                       DAVID L. DAIN (Colorado Bar #12224)
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-1210


TODD P. GRAVES
United States Attorney


    4/8/04                                  /s/ Charles M. Thomas

Date                                       CHARLES THOMAS MO Bar #28522
Assistant United States Attorney
Western District of Missouri
U.S. Department of Justice
Charles Evans Whittaker Courthouse
Room 5510
400 East 9th Street
Kansas City, MO 64106

**FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY**


  3/16/04                                 /s/  James B. Gulliford
Date                                          JAMES B. GULLIFORD
                                                   Regional Administrator
                                                     U.S. Environmental Protection Agency,
                                                     Region VII
                                                    901 North 5th Street
                                                   Kansas City, Kansas   66101


  3/9/04                                    /s/  David A. Hoefer
Date                                          DAVID A. HOEFER
                                                   Attorney
                                                   U.S. Environmental Protection Agency,
                                                     Region VII
                                                    901 North 5th Street
                                                   Kansas City, Kansas   66101

44

**FOR THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY**


____2/24/04_____     Signature:    /s/ Gregory W. Stengham_____
Date                            Name (print): Gregory W. Stengem_____
                                       Title: VP Safety, Training & Operations Support
                                Address:    2600 Lou Menk Dr._____
                                            NOC-2_____
                                            Fort Worth, Texas 76131_____
                                            _____


Agent Authorized to Accept Service on Behalf of Above-signed Party:


                                Name (print): /s/ Thomas A. Ryan_____
                                       Title:    Attorney_____
                                Address:      Lathrop & Gage, L.C._____
                                              2345 Grand Boulevard_____
                                              Kansas City, Missouri 64108-2612___
                                Phone No.:    (816) 292-2000_____


**APPROVED AS TO FORM**


/s/ Pam L. Nehring_____
Burlington Northern Sante Fe Law Department


**FOR THE CITY OF NORTH KANSAS CITY, MISSOURI**

45

December 17, 2003      Signature:    /s/ Gene Bruns                

Date                       Name (print):   Gene Bruns                    

                                    Title:   Mayor                         

                               Address:   City of North Kansas City      

                                          2010 Howell               

                                          North Kansas City, MO 64116   

Agent Authorized to Accept Service on Behalf of Above-signed Party:

                               Name (print):   Thomas Barzee              

                                    Title:   City Counselor            

                               Address:   City of North Kansas City      

                                         2010 Howell               

                                          North Kansas City, MO 64116   

                               Phone No.:   816-274-6000      

46

**FOR HARDEE'S FOOD SYSTEMS, INC.**

<u>November 18, 2003</u>      Signature:    <u>/s/  Robert A. Wilson</u>
Date                  Name (print): <u>Robert A. Wilson</u>
                           Title: <u>Senior Vice President</u>
                     Address: <u>401 W. Carl Karcher Way</u>
                                  <u>Anaheim, CA 92801</u>
                                  <u>                       </u>
                                  <u>                       </u>

Agent Authorized to Accept Service on Behalf of Above-signed Party:

                                Name (print): <u>Romondoss Stover</u>
                                       Title: <u>Assistant General Counsel</u>
                                Address: <u>One US Bank Plaza</u>
                                             <u>505 N. 7th Street, Suite 2000</u>
                                             <u>St. Louis, MO 63101-1643</u>
                                Phone No.: <u>(314) 259-6361</u>

47

**FOR THE ESTATE OF CHARLES F. READE, SR., NANCY READE FORSTER, PERSONAL REPRESENTATIVE**

November 21, 2003
Date

Signature:      /s/  Nancy Reade Forster
Name (print):  Nancy Reade Forster
Title:          Personal Representative
Address:        134 Woodridge Drive
                Morehead City, NC 28557
                _____
                _____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Laurence Reich
Title:          Attorney
Address:        Carpenter, Bennett & Morrissey
                Three Gateway Center, 17th Floor
                100 Mulberry Street
                Newark, NJ 07102-4075
Phone No.:      973-622-7711

48

**FOR TERRACON INC.**

| | |
|---|---|
| _____1 /11/04_____ | Signature:    /s/ David R. Gaboury _____ |
| Date | Name (print): David R. Gaboury _____ |
| | Title: President _____ |
| | Address:    16000 College Blvd. _____ |
| | Lenexa, KS 66219 _____ |
| | _____ |
| | _____ |

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):   David R. Gaboury _____
Title:   President _____
Address:    16000 College Blvd. _____
Lenexa, KS 66219 _____
_____
Phone No.:    (913) 599-6886 _____

49

**FOR U.S. BORAX INC.**


November 24, 2003             Signature:      /s/ Jeffrey Olsen
Date                            Name (print):  Jeffrey Olsen
                                     Title:  Chief Financial Officer
                                Address:  U.S. Borax Inc.
                                            26877 Tourney Road
                                            Valencia, California 91355


Agent Authorized to Accept Service on Behalf of Above-signed Party:



                                            Michele B. Corash, Esq.
                      Name (print):  Brooks M. Beard, Esq.
                                Title:
                      Address:  MORRISON & FORESTER LLP
                                          425 Market Street
                                          San Francisco, CA 94105
                    Phone No.:  (415) 268-7000

50